NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MICHAEL SEVENS MARTINEZ,   :
                           :     CIV. NO. 19-21102 (RMB-AMD)
                           :
          Plaintiff     :
   v.                     :     **OPINION**
                           :
THE UNITED STATES        :
OF AMERICA,              :
                           :
         Defendant   :
_____

Michael Sevens Martinez
#31763-051
FCI-Fairton
P.O. Box 420,
Fairton, New Jersey 08320
     Plaintiff, *pro se*

Kristin Lynn Vassallo, Assistant United States Attorney
Office of the United States Attorney
District of New Jersey
970 Broad Street
Newark, New Jersey 07102
     Attorney for Defendant United States of America

RENÉE MARIE BUMB, Chief United States District Judge

     Plaintiff Michael Sevens Martinez ("Plaintiff") brought this action against

Defendant United States of America ("Defendant") to recover damages under the

Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, *et. seq.*, for

injuries he sustained while incarcerated in the Federal Correctional Institution in

Fairton, New Jersey ("FCI Fairton") (Compl., Dkt. No. 1.)  On August 4, 2022, the Court denied without prejudice Defendant's motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  (Dkt. Nos. 21, 22.)  The Court found that Plaintiff should have the opportunity for jurisdictional discovery to support his claim that he was neither performing his regular work assignment nor performing voluntary work approved by staff at the time he sustained an injury while stripping the dining hall floor in FCI-Fairton.  (Dkt. No. 21 at 9-11.)

This matter is now before the Court upon Defendant's renewed motion to dismiss (Dkt. No. 49), Plaintiff's brief in opposition to Defendant's renewed motion to dismiss (Dkt. No. 60), Plaintiff's motion for hearing and appointment of counsel to authenticate documents (Dkt. No. 61), Defendant's reply brief (Dkt. No. 64), and Defendant's motion to seal (Dkt. No. 65).  The Court will decide the motions on the briefs without an oral hearing pursuant to Federal Rule of Civil Procedure 78(b).

For the reasons discussed below, the Court will grant Defendant's renewed motion to dismiss and motion to seal, deny Plaintiff's motion for hearing and appointment of counsel, and dismiss all remaining motions as moot.

## I.  BACKGROUND

### A.  <u>Procedural History</u>

Prior to filing his complaint in this matter, on May 21, 2019, Plaintiff filed an administrative tort claim with the Federal Bureau of Prisons ("BOP") seeking $225,000 for injuries he sustained at FCI-Fairton on March 26, 2019.  (Declaration of Ondreya

Barksdale[1] ("Barksdale Decl."), Ex. B; Docket No. 15-5 at 6-10.)  On June 14, 2019, the BOP denied Plaintiff's administrative tort claim, advising him that "[t]he proper remedy for an inmate work-related injury is the Inmate Accident Compensation System as set forth in 18 U.S.C. § 4126 and 28 C.F.R. Part 301" and that, if he wanted to file a claim under this system, he "should contact the Safety Manager at the institution where you are confined to acquire the proper forms, [which] should be submitted at or near the time of release from confinement." (Barksdale Decl., Ex. C, Docket No. 15-5 at 12.)  Plaintiff filed the complaint in this case on December 5, 2019. (Compl., Dkt. No. 1.)  On June 16, 2020, the Court dismissed the FTCA claims asserted against several officers in their official capacities and permitted the FTCA claim to proceed against the United States of America. (Opinion and Order, Dkt. Nos. 4, 5.)  On November 12, 2021, the U.S. Marshals Service served the summons and complaint on Defendant. (Dkt. No. 14.)  On August 4, 2022, the Court denied without prejudice Defendant's motion to dismiss for lack of jurisdiction, and permitted the parties to engage in jurisdictional discovery. (Dkt Nos. 21, 22.)  Defendant renews its motion to dismiss the complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), asserting the Inmate Accident Compensation Act ("IACA") provides the exclusive remedy for Plaintiff's work-related injury in prison. (Def's Mot. to Dismiss, Dkt. No. 49.)  Plaintiff seeks a hearing for authentication of documents produced by Defendant

---

[1] Ondreya Barksdale is a Paralegal Specialist employed by the BOP Northeast Regional Office who has access to records maintained in the ordinary course of business. (Barksdale Decl., Dkt. No. 15-4.)

in discovery (Pl's Mot. for Hearing and Appoint of Counsel to Authenticate Documents, Dkt. No. 61) and opposes dismissal of the complaint. (Pl's Response to Def's Renewed Motion to Dismiss, Dkt. No. 60.)

### B.   **The Complaint**

Plaintiff alleges the following facts in his complaint, relevant to Defendant's motion to dismiss for lack of jurisdiction. In March 2019, Plaintiff was incarcerated in FCI-Fairton, where he was assigned to work as a B-Left Unit A.M. Orderly,[2] in the housing unit where he lived. (Compl., Dkt. No. 1, § IV, ¶ 1.) Inmates must comply with any correctional officer's order or be subjected to disciplinary proceedings that may result in harsher conditions for the inmate. (*Id.*, ¶ 2.) On March 22, 2019, Plaintiff was instructed to report to the dining hall (or "chow hall") for his unit on the following Monday morning. (*Id.*, ¶ 3.) He reported to the chow hall on March 25, 2019, and he was assigned by Officer Marchese ("Marchese"),[3] along with several fellow inmates, to strip the chow hall floor of wax. (*Id.*, ¶¶ 4-8.) The inmates did not complete the project that day, and Marchese ordered them to return the next morning to finish the job. (*Id.*, ¶ 9.) On March 26, 2019, while disposing of the dirty water containing the chemicals used to strip the floor, the water spilled on Plaintiff's feet and caused chemical burns. (*Id.*, ¶¶ 10-14.) Plaintiff required surgery for severe burns. (*Id.*, ¶ 20.)

---

[2] Plaintiff later agreed that his work assignment was B-Left Unit P.M. Orderly. (Pl's Response to Def's Renewed Motion to Dismiss, Dkt. No. 60 at 3.)

[3] The Court has substituted the correct spelling of Defendant Michael Marchese's name, as spelled in his declaration. (Dkt. No. 49-6.)

Plaintiff alleges Defendant was negligent in providing a safe environment and workplace. (*Id.*, ¶¶ 26-27.) Relevant here, Plaintiff further alleges:

> The aforementioned ordered duties that resulted in Plaintiff's aforementioned injuries, being not in the area he was assigned to work in, being not of the type he volunteered for, being not of the type he received any wages whatsoever for, and being not of the discipline-based "extra-duty" type, are best characterized as "extraneous duties."

(*Id.*, ¶ 24, *see also* ¶¶ 33-35.)

## II.   DISCUSSION

### A.   <u>Rule 12(b)(1) Standard of Law</u>

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge a complaint for lack of subject matter jurisdiction in lieu of filing an answer. A factual challenge to subject matter jurisdiction, unlike a facial challenge, "attacks the factual allegations underlying the complaint's assertion of jurisdiction" by presenting competing facts. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual challenge to subject matter jurisdiction allows "a court [to] weigh and consider evidence outside the pleadings." *Id.* (internal quotation marks omitted).[4]  Plaintiff has the burden of proof to establish jurisdiction by a preponderance of the evidence. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). "[I[n reviewing a factual attack, the court must permit the plaintiff to respond with rebuttal evidence in support of

---

[4] *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that a because a Rule 12(b)(1) motion puts the trial court's very power to hear the case at issue, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case).

jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." *Id.* If there is a material disputed fact, the court must conduct a hearing. *Id.*

**B.    Defendant's Renewed Motion to Dismiss and Motion to Seal**

**1.    <u>Motion to dismiss</u>**

Plaintiff arrived at FCI Fairton in March 2018, and has resided there continuously since that date. (Declaration of Kristin Vassallo ("Vassallo Decl."), Ex. A at 34, Dkt. No. 49-4 at 10.) Plaintiff had a number of different work assignments at FCI-Fairton. (*Id.* at 37-38, Dkt. No. 49-4 at 11; Declaration of Michael Marchese ("Marchese Decl."), Ex. 2 at PLF 155, Dkt. No. 49-7 at 18.) One assignment was for Food Service, from August 16, 2018 to October 18, 2018, where Plaintiff helped the cooks prepare meals and clean up. (Vassallo Decl., Ex. A, Dkt. No. 49-4 at 11.) From October 18, 2018 to December 6, 2018, Plaintiff remaining working in the kitchen, but in a different job with a different pay grade. (*Id.* at 11-12.) On December 26, 2018, Plaintiff asked to leave his kitchen job and was considered "unassigned," but he worked as an orderly in the B housing unit. (*Id.* at 12.) BOP's Inmate History Work Detail Report indicates that from March 24-26, 2019, Plaintiff was assigned to work as a compound orderly "CCS Orderly PM-2". (Marchese Decl., Ex. 2 at PLF 155, Dkt. No. 49-7 at 18.) A compound orderly generally performs outdoor cleaning duties. (Vassallo Decl., Ex. A at 43, Dkt. No. 49-4 at 12.)

On March 25 and March 26, 2019, Plaintiff was assigned to a special work detail at Food Service (aka the chow hall). (Marchese Decl., Dkt. No. 49-6 ¶ 4.; Ex. 2 at PLF

155, Dkt. No. 49-7 at 18.)  Marchese, the Assistant Food Service Administrator, does not recall how Plaintiff was assigned to this detail.  (Marchese Decl. ¶ 4, Dkt. No. 49-6.)  Plaintiff stated in his administrative tort claim that Marchese "recruited [him] to assist in a floor stripping and waxing project in Food Service," but Plaintiff later testified that he did not actually speak with Marchese, he just assumed that Marchese reached out through Counselor Freeman. (Vassallo Decl., Ex. A. at 73-74, Dkt. No. 49-4 at 20; Barksdale Decl., Ex. B at US010, Dkt. No. 49-9 at 8.)  Plaintiff claims that on March 22, 2019, Freeman told him to report to the Chow Hall on the following Monday, March 25.  (Vassallo Decl., Ex. A at 45-46, 48, Dkt. No. 49-4 at 13.) According to Plaintiff, he asked Freeman why he had to report there, noting that he did not work in the kitchen, and Freeman said, "because I'm telling you." (*Id.* at 46, 49, 77-79, Dkt. No. 49-4 at 13, 14, 21.)  Plaintiff explained:

> And me wanting to comply and be a -- I don't want no problems with the man, because he could give me a write-up, or reprimand me or any type of issues with the man, so I got to comply. . . I was like okay. I don't want no problem as far as like –you know what I'm saying? I just want to follow my orders that is given to me.

(*Id.* at 49, Dkt. No. 49-4 at 14.)  Although Plaintiff claimed in his "Limited Jurisdiction Discovery Disclosures" that Freeman threatened to issue an incident report and subject him to sanctions if he continued to refuse the work assignment, Plaintiff later conceded at his deposition that Freeman did not actually say those words; rather,

Plaintiff interpreted Freeman's instruction as an implied threat. (*Id.* at 81-85, Dkt. No. 49-4 at 22-23; Vassallo Decl., Ex. B (Plaintiff's Limited Jurisdictional Discovery Disclosures) at PLF 005, Dkt. No. 49-4 at 30.) Freeman denied assigning Plaintiff to work in the chow hall on March 25-26, 2019, and denied ever threatening him to complete any work assignment in Food Service. (Declaration of Clinton Freeman[5] ("Freeman Decl.") ¶¶ 3-4, Dkt. No. 49-5.) Freeman does not recall having any conversations with Plaintiff about his work assignment. (*Id.* ¶ 4.)

Plaintiff did not complain to anyone about the chow hall assignment before he reported for duty. (Vassallo Decl., Ex. A at 52, 54-55, Dkt. No. 49-4 at 14-15.) He testified, "I was like I don't want to go, but I'm going to go. Maybe I'll get a[n] extra tray out of the deal. I don't know. Maybe they'll give me an extra dessert or something. I'm figuring how bad could it be. I mean I didn't know what to expect, so I complied." (*Id.* at 52, Dkt. No. 49-4 at 14.) On March 25, 2019, Plaintiff reported to the chow hall. (*Id.* at 55, Dkt. No. 49-4 at 15.) There were inmates who were specifically assigned to work in the chow hall but "[t]hey needed a couple extra hands to assist . . . because they were shorthanded." (*Id.* at 57, Dkt. No. 49-4 at 16.) When Plaintiff got to the chow hall, Marchese told him and the other inmates to assist with stripping and waxing the floor. (*Id.* at 57-59, Dkt. No. 49-4 at 16.) Marchese gave initial directions to the group and said he would check back in later, then left the area. (*Id.* at 59-60.) While Marchese was gone, other BOP staff members supervised Plaintiff and the other

---

[5] Clinton Freeman was assigned as Counselor for housing unit Bravo-Left at FCI Fairton, Plaintiff's housing unit, in March 2019. (Freeman Decl. ¶ 2, Dkt. No. 49-5.)

inmates. (*Id.* at 60.) At the end of the day, Marchese told the inmates to return the next day so they could finish the project. (*Id.* at 61-62, Dkt. No. 49-4 at 17.) When asked at his deposition if he said anything when Marchese told him and the others to return, Martinez initially said he asked, "Can't you get somebody else to do it?" and that Marchese replied, "[N]o. If you're going to give me a problem I'm going to call your counselor." Plaintiff responded, "I'm like man. I don't want no problems, I'll be here." (*Id.* at 61, Dkt. No. 49-4 at 16). But Plaintiff later admitted, "It might not have been me [who asked Marchese if he had to come back]. It might have been the other guys working. I'm just going with the flow. You know what I'm saying? I'm not trying to rock the boat or make any problems for myself." (*Id.* at 64, Dkt. No. 49-4 at 17.)

Plaintiff returned to the chow hall as instructed around 7:30 a.m. on March 26, 2019. (*Id.* at 66, Dkt. No. 49-4 at 18.) Marchese instructed Plaintiff and the others to strip the wax from the floor. (*Id.*) The same BOP officers who supervised the inmates the previous day supervised the project on March 26, 2019. (*Id.* at 66-68.) At the time Plaintiff injured himself on the morning of March 26, Plaintiff said he was "assisting the kitchen orderlies and the staff stripping and waxing the floor" in the chow hall. (*Id.* at 45, Dkt. No. 49-4 at 13.)

Following the injury, Plaintiff reported to FCI-Fairton Health Services for what was described as a "[w]ork-related encounter." (Barksdale Decl., Ex. E (March 26, 2019 Clinical Encounter Note) at 1, Dkt. No. 50 at 2.) Plaintiff appeared to have second or third-degree burns and was sent to an outside hospital for evaluation. (*Id.*, Dkt. No. 50 at 1-2.) Inmate account records indicate that Plaintiff was paid $18.75 on

April 3, 2019, for work performed in March 2019. (Marchese Decl., Dkt. No. 49-6, ¶ 8, and Ex. 6 (Inmate Statement) at US138, Dkt. No. 49-7 at 89.) At a pay grade 4 receiving $.12 an hour, it appears that Plaintiff received payment for each of the days he worked as well as bonus pay. (*Id.*)

### 2.   Motion to Seal

Defendant submitted Plaintiff's medical records (Dkt. No. 50) in support of its renewed motion to dismiss and filed a motion to seal (Dkt. No. 65) the medical records pursuant to Local Civil Rule 5.3(c)(3). This Court makes the following findings of fact and conclusions of law on Defendant's motion to seal:

> 1. Defendant's motion to dismiss raises issues implicating plaintiff's health and medical care.
>
> 2. It is necessary for defendant to submit medical records relating to plaintiff's medical care in order to address the issues raised in Defendant's renewed motion to dismiss.
>
> 3. The records at issue (Ex. E, Dkt. No. 50), contain confidential and private information concerning plaintiff's health. "[T]he constitutional right to privacy in one's medical information exists in prison." *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001) (citation omitted).
>
> 4. Disclosure of those records to the public, via publication on the Court's docket, would deprive Plaintiff of his right to privacy in his medical records.
>
> 5. Only complete redaction of the medical records would protect Plaintiff's privacy interest in his medical information; therefore, a less restrictive alternative to sealing the records is not available.
>
> 6. Good cause exists to seal the records at issue under the considerations set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), and Local Civil Rule 5.3(c).

Therefore, the Court will grant Defendant's motion to seal.

**C.    Plaintiff's Opposition Brief and Motion for Hearing and for Appointment of Counsel to Authenticate Documents**

**1.    <u>Plaintiff's opposition to Defendant's renewed motion to dismiss</u>**

Plaintiff submits Defendant failed to establish that Plaintiff was performing his regular work assignment or voluntary work approved by staff, as defined in 28 C.F.R. § 301.301, when he was injured stripping floors on March 26, 2019.  (Pl's Response to Def's Renewed Mot. to Dismiss, Dkt. No. 60 at 1-2.)  Plaintiff's unit counselor, Mr. Freeman, was responsible for Plaintiff's work assignments on March 25 and 26, 2019, but he denied assigning Plaintiff to work in Food Service on those days.  (Freeman Decl., ¶¶ 2-3, Dkt. No. 49-5 at 1.)  Therefore, Plaintiff contends he was not approved to work. (Pl's Response to Def's Renewed Mot. to Dismiss, Dkt. No. 60 at 2.)  Furthermore, 28 C.F.R. § 301.301(c) provides:  "Compensation shall not be paid for injuries suffered away from the work location." (*Id.*)  BOP defines "work location" as any place an inmate is authorized to be performing his assignment. (*Id.*)  Plaintiff contends his work location was outdoors, and neither Freeman nor Marchese can explain how Plaintiff was assigned to work in Food Service on the day at issue. (*Id.* at 3.)

Second, Plaintiff alleges BOP altered a document produced in response to Plaintiff's motion to compel. (*Id.* at 2.)  As a result, he challenges the authenticity of all documents submitted by the Bureau of Prisons ("BOP"). (*Id.*)  Plaintiff filed a

motion for hearing and appointment of counsel to authenticate documents (Dkt. No. 61), which this Court will address below.

Third, Plaintiff asserts the total amount and rate of pay he received for work on March 25 and 26, 2019, according to Marchese's declaration, is inconsistent with 28 C.F.R. § 545.26(e)(2), which limits pay to hours actually worked and bonus pay to 50% of the pay. (Pl's Response to Def's Renewed Mot. to Dismiss, Dkt. No. 60 at 3.) Plaintiff contends, based on Marchese's explanation, that he should have been paid a total of $2.88 and his pay should have come from Food Service, not B-Unit, B-Left, the compound where Plaintiff was actually assigned to work. (*Id.*, citing Ex. 3, Dkt. No. 60 at 12.)

Finally, Plaintiff points to BOP Policy Statement 1600.11(4)(d),[6] which provides: "upon assignment to a job or detail, each inmate must receive training by his/her supervisor concerning safe work methods and hazardous materials. (Dkt. No. 60 at 4.) Compliance with this regulation is documented on BOP's "IJO Form." (*Id.*) BOP did not produce an IJO form signed by Plaintiff for the relevant time period. (*Id.*) Plaintiff draws the following conclusions from the evidence presented: (1) he did not work for Food Service the day he was injured; (2) he was not approved by staff to be working in Food Service; and (3) he was not authorized to perform his work

---

[6] Available at
https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=1000# (last visited Sept. 18, 2023).

assignment of CCS-Orderly PM-2 within the Food Service location. (*Id.*) Therefore, his injury on March 26, 2019 is not covered by the IACA.

### 2. Plaintiff's motion for hearing and for appointment of counsel to authenticate documents

Plaintiff contends that Defendant produced a fabricated IJO Report and false declaration of B. Schwinge in response to Plaintiff's jurisdictional discovery requests. (Pl's Mot. for Hearing and for Appointment of Counsel to Authenticate Documents, Dkt. No. 61 at 1; *see* Schwinge Decl., Dkt. No. 64-2 at 2-13.) According to Plaintiff, the IJO Form, dated July 12, 2019, was altered from its original form. (Dkt. No. 61 at 1.) The date of the signature, July 12, 2019, is impossible because the form was not in existence until 2022. (*Id.*) Additionally, the form indicates that the staff member who conducted Plaintiff's training was B. Schwinge, but B. Schwinge confirmed to Plaintiff that he did not work at FCI Fairton in July 2019. (*Id.* at 2.) Therefore, Plaintiff seeks appointment of counsel to represent him in challenging the authenticity of this document, and all BOP documents produced in this matter, in a hearing before the Court. Plaintiff seeks to call B. Schwinge as a witness. (Dkt. No. 61 at 2.)

### D. Defendant's Reply Brief

### 1. Reply to motion for hearing and for appointment of counsel to authenticate documents

Defendant submitted the Declaration of Brian Schwinge to authenticate the IJO form that Plaintiff claims was altered. (Reply Mem. of Law in Further Support of Defendant's Renewed Mot. to Dismiss ("Def's Reply Brief"), Docket No. 64 at 8, n.1;

Declaration of Brian Schwinge ("Schwinge Decl.") Dkt. Nos. 64-1, ¶¶ 1-2; Ex. 1 (IJO Form), Dkt. No. 64-2 at 2.) Schwinge explained that he is the counselor on Plaintiff's housing unit, and as such, he is the detail supervisor for Unit Orderlies, including Plaintiff. (Schwinge Decl., Dkt. No. 64-1, ¶ 2.) In 2022, the Safety Department updated the IJO form to make it consistent across departments. (*Id.*, ¶ 3.) Therefore, on or about May 9, 2022, Schwinge met with Plaintiff and the other Unit Orderlies to have them sign the updated form. (*Id.*) Schwinge wrote in the date that each inmate was assigned to the specific work detail, which for Plaintiff was July 12, 2019. (*Id.*) Schwinge used this date, rather than May 9, 2022, because the IJO form is completed upon an inmate's assignment to the detail. (*Id.*) The signatures on the form are those of Plaintiff and Schwinge, and the form has not been altered since it was signed. (*Id.*, ¶ 4.) Defendant further contends that the IJO Form has no bearing on the renewed motion to dismiss, and Plaintiff has not provided any basis to support his challenge to the authenticity of all documents produced by BOP in discovery in this matter. (Def's Reply Brief, Dkt. No. 64 at 9, n. 1.)

### 2. Reply to Plaintiff's opposition to Defendant's renewed motion to dismiss

Defendant argues the record establishes that Plaintiff was injured during work activity in connection with the maintenance or operation of the institution, within the meaning of the IACA, 18 U.S.C. § 4126(c)(4). (*Id.* at 5.) Thus, his work-related injury claim falls within the IACA and outside the jurisdiction of the FTCA. (*Id.*) First, Defendant maintains that the record refutes Plaintiff's claim that he was not

performing approved work in an authorized work location at the time of his injury. (*Id.* at 6.)  In his deposition, Plaintiff stated that a BOP staff member told him to report for work at the chow hall on March 25 and 26, 2019, then Marchese instructed Plaintiff on the work to perform, and BOP staff supervised the work.  (*Id.* at 6-7.)  The fact that Marchese does not remember how Plaintiff was assigned to the work detail has no bearing on the fact that Plaintiff was working under the supervision and approval of BOP staff when he was injured. (*Id.* at 7.)

Plaintiff challenges that he was compensated for work on March 25 and 26, 2019, because his pay reflects an amount larger than BOP regulations allow, but Defendant argues this is immaterial because the record establishes that Plaintiff was paid for work in March 2019, and received a bonus.  (Def's Reply Brief, Dkt. No. 64 at 7.)  Even if Plaintiff was not paid for those days, he could be compensated under the IACA for performing voluntary work. (*Id.* at 8.)

Finally, Defendant submits that Plaintiff received initial job training, in compliance with BOP Program Statement 1600.11, when he was initially assigned to Food Service on August 16, 2018. (*Id.* at 8-9, citing Marchese Decl., Ex. 3; Dkt. No. 49-7 at 20-25.)  Plaintiff was not required to complete this form again in March 2019, because it was not his initial placement in Food Service. (*Id.* at 9.)

E.   **Analysis**

1.   **Motion for hearing and appointment of counsel for authentication of documents**

Plaintiff seeks appointment of counsel and a hearing on the authenticity of the 2022 IJO form bearing Plaintiff's signature dated July 12, 2019. (Pl's Motion for Hearing and Appointment of Counsel for Authentication of Documents, Dkt. No. 61.) In response to Plaintiff's motion, Defendant submitted the Declaration of Brian Schwinge (Dkt. No. 64-1), who produced a true and correct copy of the IJO form in question. (Ex. 1, Dkt. No. 64-2.) Schwinge explained that after this new form was issued in 2022, as the supervisor of Unit Orderlies on housing unit Bravo Left, he discussed the updated form with the Unit Orderlies, including Plaintiff; and he stated that the form contains the true signatures of himself and Plaintiff, signed on May 9, 2022, but dated July 12, 2019, the date Plaintiff initially received training for the work detail.

Federal Rule of Evidence 901(a) provides, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One manner of authentication is by testimony of a witness with knowledge of the evidence. Fed. R. Evid. 901(b)(1). The Declaration of Brian Schwinge establishes that he has knowledge of the IJO form in question because he signed it himself and brought it to Plaintiff to sign on May 9, 2022. Schwinge explained this document was not altered, it was a new, updated BOP form that Plaintiff signed in May 2022, which replaced an older form Plaintiff had signed on July 12, 2019. The burden of proof for authentication is light; it requires only a prima facie showing to the court. *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 329 (3d Cir. 2005). Defendant has

properly authenticated the document attached as Exhibit 1 to the Schwinge Declaration. Therefore, appointment of counsel to represent Plaintiff at a hearing on this document's authenticity is unnecessary. Furthermore, the only basis Plaintiff offered for his challenge to the admissibility of all BOP documents was his belief that this particular document was altered. Defendant has submitted persuasive testimony that this document is what it is purported to be. The same is true of all BOP documents submitted to the Court in support of Defendant's renewed motion to dismiss, each was submitted with a declaration under oath by a person with knowledge of the evidence submitted. (Dkt. Nos. 49-3 through 49-10, Dkt. No. 64-1.) The Court will deny Plaintiff's motion for hearing and appointment of counsel for authentication of documents.

### 2.   Standard of law:  the IACA

The IACA provides compensation to federal inmates who suffered injuries "in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C.A. § 4126(c)(4). The Federal Tort Claims Act, enacted twelve years after the IACA, does not protect federal prisoners who are already protected by 18 U.S.C. § 4126. *United States v. Demko*, 385 U.S. 149, 152 (1966). "In 1961 Congress expanded the coverage of 18 U.S.C. § 4126 to include not only prisoners' injuries suffered in 'any industry' but also in 'any work activity in connection with the maintenance or operation of the institution where confined.' Act of September 26, 1961, 75 Stat. 681. 18 U.S.C. § 4126." *Id.* at 153. The BOP implemented the statute by regulation, stating in relevant part:

> (b) Compensation may only be paid for work-related injuries or claims alleging improper medical treatment of a work-related injury. This ordinarily includes only those injuries suffered during the performance of an inmate's regular work assignment. However, injuries suffered during the performance of voluntary work in the operation or maintenance of the institution, when such work has been approved by staff, may also be compensable.

28 C.F.R. § 301.301(b).

### 3.   Plaintiff's performance of his regular work assignment

Plaintiff has the burden to establish his injury falls outside those injuries exclusively covered by the IACA; "injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined."  18 U.S.C. § 4126(c)(4); *see Hampton v. Jones*, No. 21-2880, 2022 WL 4820355, at *2 (3d Cir. Oct. 3, 2022) ("Federal prisoners seeking compensation for injuries sustained during penal employment are limited to the remedy provided by the IACA.")  Although 28 C.F.R. § 301.301(b) provides that compensation for work injuries "ordinarily includes only those injuries suffered during the performance of an inmate's regular work assignment[,]" an agency interpretation of a statute "cannot run contrary to Congress's intent as reflected in a statute's plain language and purpose."  *Madison v. Res. for Hum. Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000) (citation omitted)).  Special work assignments that constitute "any work activity in connection with the maintenance or operation of the institution in which the inmates are confined" also fall within the statute.

Based on Plaintiff's own deposition testimony, he was injured while stripping the wax from the chow hall floor at the direction and under the supervision of BOP staff. He was paid for this work. Therefore, his injury is covered by the IACA under the plain language of the statute. Indeed, BOP denied Petitioner's administrative tort claim under the FTCA because his work-related injury on March 26, 2019, was covered by the IACA. (Compl., Ex. B, Dkt. No. 1-2 at 2.) It is undisputed that a BOP staff member, regardless of which staff member, assigned Plaintiff to a special work assignment in Food Service because they needed additional inmate assistance on March 25 and 26, 2019. Plaintiff had training in Food Service from his prior work assignment, and he was called upon by staff to work for pay in Food Service on March 25 and 26, 2019. It is irrelevant that BOP appears to have made a mistake, in Plaintiff's favor, in the amount of pay he received for such work. Plaintiff's circumstances fit squarely within the statutory definition of inmates whose compensation for injuries are exclusively covered under § 4126(c)(4). Therefore, Plaintiff has failed to meet his burden to establish jurisdiction under the FTCA.

## IV.   CONCLUSION

For the reasons discussed above, the Court will grant Defendant's renewed motion to dismiss and deny Plaintiff's motion for hearing and appointment of counsel for authentication of documents. The Court will dismiss this matter for lack of jurisdiction under the FTCA.

An appropriate Order follows.

Date:  **September 27, 2023**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**Chief United States District Judge**